

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

MAY 3 1 2007

CLERK, U.S. DISTRICT COURT
By _____
   Deputy

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RALPH ALEXANDER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:02-CV-1561-K |
| | § | |
| GRAND PRAIRIE FORD, L.P., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant's Motion for Summary Judgment, filed July 11, 2003, and Defendant's Supplemental Motion for Summary Judgment, filed October 27, 2006. After review and consideration of the motions, responses, replies, pleadings on file in this case, summary judgment evidence, and the applicable law, the court **grants** Defendant's request for summary judgment, and dismisses Plaintiff's claims with prejudice.

### I.     Factual and Procedural Background

Plaintiff Ralph Alexander ("Alexander") is a fifty-two year old African American male. Alexander has worked in the automobile industry for nearly 20 years, holding various positions in sales and administration. Defendant Grand Prairie Ford ("GPF" or the "dealership") is a new and used car dealership located in Grand Prairie, Texas. Alexander worked for GPF from May 22, 2000 until May 31, 2001.

1

Before coming to GPF, Alexander worked for numerous car dealerships in Indiana. In April 2000, Alexander applied for employment with GPF. Bill Carr ("Carr"), an employee of Van Tuyl Inc., a company affiliated with GPF and Jeff Baker ("Baker"), GPF's General Manager, both interviewed Alexander by telephone. After being interviewed by phone, GPF flew Alexander and his wife to Texas for further interviews. Carr met the Alexanders at the airport. According to Alexander, Carr turned "a little red" and went to make a phone call upon seeing the Alexanders for the first time. Alexander further states that when he returned to the Alexanders, Carr asked him "well, what's more important, the position or the money?"

During his interviews, Alexander and GPF discussed a five-year opportunity or program for Alexander. Alexander states that the plan discussed was a "fast track" to gaining ownership of a portion of a dealership. The five-year plan proposed to Alexander would be based upon his performance. Alexander was told that he would come in at the lesser position of Assistant Sales Manager ("ASM") so that he could learn the inner workings of the GPF system. Alexander asked how much he could earn as an ASM, and Baker responded that in the previous year, his best ASM had earned $120,000-125,000. It was Alexander's understanding that if and when he was awarded the position of General Sales Manager ("GSM"), he would earn $250,000. However, he admits that he was not offered the GSM position during his interviews with GPF, and was not given a date by which he would attain that position. Alexander further states that during his

2

interviews, Baker mentioned another GPF employee, Robert Cook ("Cook"), and told Alexander that he was trying to help Cook improve his performance.

During his interviews at the dealership, Alexander also discussed his desire to go to church on Sundays, and was told that should not be a problem, as GPF would potentially change its operating schedule, opening on Saturdays and being closed on Sundays. It is undisputed that for a period of time during Alexander's tenure with GPF, the dealership did open on Saturdays instead of Sundays.

After Alexander returned to Indiana, he had several telephone conversations with Baker and was ultimately offered the ASM position, which he accepted. He began work as an ASM in May 2000. In September 2000, Baker transferred Alexander to the position of Customer Relations Manager. This position increased Alexander's responsibilities at GPF, and included duties regarding customer satisfaction and deliveries. In this position, Alexander also had responsibility for a customer assurance program known as "Blue Oval." It was GPF's goal to become "Blue Oval Certified" by meeting certain performance levels of customer satisfaction in sales and service.

GPF obtained its Blue Oval Certification in December 2000, after which Alexander began working as a Trainer. The position of Trainer again entailed an increase in Alexander's responsibilities at GPF. As a Trainer, his duties were to "hire, train, evaluate, fire, motivate, conduct off-site job fairs, on-site job fairs, advertise, place advertisements in various publication, [and] evaluate performance levels." (Plaintiff's

3

Appendix at 47).   While Alexander was working as Trainer, he decided to apply to participate in the Ford Minority Dealership Program.   In May 2001, Alexander asked Baker to provide him with a recommendation for that program, which Baker did.

At various times immediately before and during his employment with GPF, the dealership promoted various individuals to the positions of General Sales Manager and New Vehicle Director.  It is undisputed that Alexander never was promoted to either of these positions, although he contends that he did not receive the desired promotions due to race and/or age discrimination.

Alexander resigned from his employment with GPF on May 31, 2001.  When asked why he decided to resign, he stated that he had been feeling negative about his position, and was offended when a co-worker asked him to cook hamburgers at an employee event held by the dealership.  Alexander viewed this request as demeaning, yet never complained about it to anyone at GPF.  Further, Alexander never complained to anyone about racial or age discrimination before his resignation from GPF.  After leaving GPF, Alexander has worked at several other car dealerships in the Dallas-Fort Worth area.  Further, on June 25, 2003, Alexander filed a bankruptcy petition seeking to discharge his debts.  Alexander did not disclose his claims against GPF as assets of his bankruptcy estate, and continued to prosecute his claims against GPF, although he later amended his bankruptcy schedules to include his claims against GPF.

Alexander sued GPF on July 22, 2002, bringing federal claims under Title VII, 42 U.S.C. § 2000e, *et seq.,* 42 U.S.C. § 1981, and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.* He further asserts state common law claims for intentional infliction of emotional distress, fraud, negligent misrepresentation, retaliation, and tortious interference.

## II.   Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Id.* at 321-25, 106 S.Ct. at 2551-54; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255-57, 106 S.Ct. 2505, 2513-14 (1986). All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993 (1962).

### III.   Defendant's Motion for Summary Judgment

GPF moves for summary judgment, contending that Alexander cannot raise a genuine issue of material fact with regard to any of his claims against GPF, and that therefore it is entitled to judgment as a matter of law.

### A.   Fraud

GPF argues that Alexander's fraud claim must be dismissed because it actually is a breach of contract claim for GPF's failure to award the GSM position to Alexander. Specifically, GPF states that where a party's damages only involve economic loss arising from the failure to perform the alleged promise, the action sounds only in contract, and further argues that Alexander's fraud claim is barred by the statute of frauds.

Generally, a separate claim for fraud may not be alleged when a party merely seeks to enforce a contractual obligation by recovering the benefit of his bargain, when that contract cannot be enforced under the statute of frauds, Tex. Bus. & Com. Code § 26.01(b)(6).  *Haase v. Glazner,* 62 S.W.3d 795, 799 (Tex. 2001).  However, out of pocket losses (as opposed to benefit of the bargain damages)  may still be recovered for fraud in connection with an otherwise unenforceable contract.  *Id.; Foley v. Parlier,* 68 S.W.3d 870, 885 n.2 (Tex. App. – Fort Worth 2002, no pet. h.).  Under the statute of frauds, any agreement which is not to be performed within one year of its making must be in writing.  Tex. Bus. & Com. Code § 26.01(b)(6).

Alexander testified in his deposition that all he could recall about GPF's alleged promise to him was that GPF was offering him an opportunity to learn the GPF system during a five-year or fast-track plan that would take five years for him to move into upper management.  He further stated that there was no express deadline or date by which he was promised he would be given the GSM position, and that the only position GPF offered him prior to his hiring was the ASM position.  Thus, GPF takes the position that Alexander cannot bring a fraud claim in order to enforce what would be, because it was not memorialized in a writing, an unenforceable agreement.

Alexander responds that the alleged promise to make him GSM "could have" been fulfilled within the first year he was employed by GPF, and therefore it is not barred by the statute of frauds.  The court disagrees, and finds that Alexander has failed to raise a genuine issue of material fact regarding this contention.  Alexander's argument is presented in a wholly conclusory fashion, and he  has cited to no evidence on summary judgment that would even suggest an agreement that his desired promotion to GSM would occur within one year of his employment with GPF.

It is Alexander's responsibility on summary judgment to cite to evidence in the record which would show that there is a genuine issue of material fact for trial; the court is not obligated to scour the record in search of proof that would permit him to avoid summary dismissal of this claim.  *See Adams v. Travelers Indemnity Co. of Connecticut*, 465 F.3d 156, 164 (5th Cir. 2006) (Rule 56 does not impose upon the district court a duty

to sift through the record in search of evidence to support a party's opposition to summary judgment); *Malacara v. Garber,* 353 F.3d 393, 405 (nonmovant must refer to record evidence in response to motion for summary judgment).  Therefore, the court agrees that to the extent Alexander is relying on a fraud theory to recover the benefit of any alleged agreement that he would be promoted to GSM, that agreement is unenforceable under the statute of frauds, and Alexander cannot recover for a "fraud" that is, at its core, a breach of contract.  *See Jim Walter Homes, Inc. v. Reed,* 711 S.W.2d 617, 618 (Tex. 1986) (when the injury is only economic loss to the subject of a contract, the claim sounds in contract alone); *Heil v. Polar Corp.,* 191 S.W.3d 805, 815 (Tex. App. – Fort Worth 2006, rev. denied) (same).

Although the court has determined that Alexander cannot recover the benefit of his alleged agreement with GPF to promote him to GSM, he further asserts that his fraud claim should survive because he is seeking recovery for other non-economic losses "such as depression, emotional distress and physical deterioration."  Meanwhile, GPF argues that Alexander's fraud claim should also fail because there is no evidence that GPF made a fraudulent representation to Alexander.

The elements of a fraud claim under Texas law are 1) a material representation; 2) that was false when made; 3) the speaker either knew it was false or asserted it without knowledge of its truth; 4) the speaker intended that it be acted upon; 5) the party acted in reliance; and 6) the party was injured as a result.  *Malacara,* 353 F.3d at

403-04; *Formosa Plastics Corp. USA v. Presidio Engineers & Contractors, Inc.,* 960 S.W.2d

41, 47 (Tex. 1998).  On summary judgment, GPF argues that Alexander can point to no

facts supporting several of these elements.  Specifically, GPF states that Alexander

admitted in his deposition that the only "promise" made to him was that he would be

hired as an ASM to learn the GPF system, and that he would be on a five-year program

toward upper management.  He further testified that he was not promised a promotion

to GSM by a specific date.  It is undisputed that Alexander was hired as an ASM, and

worked in various positions at GPF until he resigned approximately one year later.

In response, Alexander makes vague and conclusory assertions that he was

promised pay levels and promotions that never occurred, and that his church attendance

would not be a problem.  In support of these contentions, Alexander refers generally to

his deposition testimony and his wife's affidavit, but provides the court with no specific

citations to summary judgment proof that would raise a genuine issue of material fact

whether GPF actually made a material misrepresentation.  Alexander's vague and

conclusory statements are not competent summary judgment proof, and will not defeat

GPF's motion for summary judgment.  *Turner v. Baylor Richardson Medical Center,* 476

F.3d 337, 345-46 (5th Cir. 2007); *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.

1992).  Further, Alexander's reference to his own deposition is inconsistent with his

testimony therein that GPF only promised him an ASM position plus a five-year

opportunity to learn the system and potentially move into upper management, and Mrs.

Alexander's affidavit merely contains vague and conclusory assertions that Alexander's pay declined. Alexander has failed to raise a genuine issue of material fact regarding his fraud claim, and this claim must be dismissed on summary judgment.

### B.   Negligent Misrepresentation

GPF next argues that the court should enter summary judgment on Alexander's claim of negligent misrepresentation. In particular, GPF contends that this claim is barred by limitations, that it is preempted by the Texas Workers' Compensation Act Tex. Lab. Code § 401.001, *et seq.* ("TWCA"), and the Texas Commission on Human Rights Act, Tex. Lab. Code § 21.001, *et seq.* ("TCHRA"), and that Alexander cannot produce competent summary judgment proof that GPF misrepresented facts to him.

### 1.   Limitations Analysis

GPF correctly states that Alexander's claim for negligent misrepresentation is governed by Texas' two-year limitations period for personal injury claims. Tex. Civ. Prac. & Rem. Code § 16.003(a). Because Alexander was offered and accepted the ASM position in May 2000, but did not bring this claim until July 22, 2002, GPF argues that it is time-barred. Alexander responds that GPF's negligent misrepresentation "with respect to promised pay plans" continued through August of 2000, and that therefore his filing of this claim in July 2002 was timely. Again, Alexander offers nothing more on summary judgment than an unsupported and conclusory assertion, which does not constitute competent summary judgment evidence that would raise a material issue of

fact regarding the timeliness of this claim. *See Turner*, 476 F.3d at 345-46; *Topalian*, 954 F.2d at 1131. Additionally, the court is not expected to comb the record for facts supporting Alexander's bare assertions. *Adams*, 465 F.3d at 164; *Malacara*, 353 F.3d at 405. The court finds that Alexander has failed to raise a genuine issue of material fact whether he timely asserted his negligent misrepresentation claim.

## 2. Preemption

GPF further states that this claim should be disposed of on summary judgment because the TCHRA provides an employee's exclusive state law means for redress of employment discrimination, and preempts claims for discrimination asserted under other state law theories. *Martin v. Kroger Co.*, 65 F. Supp.2d 516, 562-63 (S.D. Tex. 1999); *Cannizzaro v. Neiman Marcus, Inc.*, 979 F. Supp. 465, 478 (N.D. Tex. 1997); *Cook v. Fidelity Investments*, 908 F. Supp. 438, 442 (N.D. Tex. 1995); *Bates v. Humana, Inc.*, 1993 WL 556416, *11 (W.D. Tex. 1993). Alexander responds that preemption is not appropriate because his negligent misrepresentation claim relates to "economic fraud and not to discriminatory treatment."

The court disagrees. Alexander is also bringing claims for employment discrimination based upon GPF's failure to promote Alexander to the GSM position he desired, and to the extent that Alexander's negligent misrepresentation claim is a restatement of his claims for racial and age discrimination, it is preempted. *See Martin*, 65 F. Supp.2d at 562 (plaintiff's claim of tortious interference with existing business

11

relations was restatement of her employment discrimination claim, and thus was preempted by the TCHRA). Although Alexander's negligent misrepresentation claim based upon "promised pay plans" may not be preempted if he does not attempt to support it with evidence of prohibited discrimination, it nonetheless fails, as the court has stated above, because it was not timely brought and is barred by the applicable statute of limitations.

### 3.   Evidence of Negligent Misrepresentation

GPF's third argument in support of summary judgment on this claim is that Alexander cannot raise a genuine issue of material fact whether GPF actually made a negligent misrepresentation. The elements of a cause of action for negligent misrepresentation are 1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; 2) the defendant supplies "false information" for the guidance of others in their business; 3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) the plaintiff suffers pecuniary loss by justifiably relying on the representation. *Barrand, Inc. v. Whataburger, Inc.,* 214 S.W.3d 122, 140 n.5 (Tex. App. – Corpus Christi 2006, pet. filed); *Fondren Const. Co., Inc. v. Briarcliff Housing Development Assoc., Inc.,* 196 S.W.3d 210, 218 (Tex. App. – Houston [1st Dist.] 2006, no pet. h.).

Additionally, the misrepresentation at issue must be one of existing fact, not a promise of future conduct. *BCY Water Supply Corp. v. Residential Investments, Inc.,* 170

S.W.3d 596, 603 (Tex. App. – Tyler 2005, rev. denied); *Dallas Fire Fighters Assn. v. Booth Research Group, Inc.,* 156 S.W.3d 188, 194 (Tex. App. – Dallas 2005, rev. denied). A promise to do or refrain from doing an act in the future is not actionable because it does not contain an existing fact. *BCY,* 170 S.W.3d at 603, *citing Miksch v. Exxon Corp.,* 979 S.W.2d 700, 706 (Tex. App. – Houston [14th Dist.] 1998, pet. denied). GPF contends that because its alleged representations to Alexander that he would receive certain pay levels and promotions pertain to future conduct, they are not actionable as negligent misrepresentation.

In response, Alexander states that GPF "represented that he *would receive* certain pay levels and promotions." (Emphasis added). This statement alone is an admission by Alexander that his negligent misrepresentation claim is not based upon a misrepresentation of existing fact. Also, as he has done in the rest of his summary judgment response, Alexander makes only vague and conclusory references to the summary judgment record without directing the court to specific facts that raise a genuine issue for trial. *See Turner,* 476 F.3d at 345-46; *Topalian,* 954 F.2d at 1131. Accordingly, for all of the foregoing reasons, Alexander's negligent misrepresentation claim must be dismissed.

## C.   Discrimination Claims – Failure to Promote

Alexander brings claims of racial discrimination under Title VII, section 1981, and age discrimination under the ADEA, because GPF failed to promote him to the position

13

of GSM and New Vehicle Director.  GPF moves for summary judgment on all of Alexander's failure to promote claims, arguing that Alexander cannot raise a material fact issue whether GPF's decisions not to promote him were a pretext for racial and/or age discrimination.

### 1.   Applicable Legal Standards

Under Title VII, an employer cannot fail or refuse to hire or to discharge any individual, or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.  42 U.S.C. § 2000e-2(a)(1). Thus, the Title VII inquiry is whether the defendant intentionally discriminated against the plaintiff based upon one of the factors prohibited by Title VII. *Johnson v. Louisiana,* 351 F.3d 616, 621 (5th Cir. 2003), *citing United States Postal Service Bd. of Governors v. Aikens,* 460 U.S. 711, 715 (1983).  Section 1981 provides that all persons shall have the same right to make and enforce contracts as is enjoyed by white citizens.  42 U.S.C. § 1981; *Jenkins v. Methodist Hosps. of Dallas, Inc.,* 478 F.3d 255, 260 (5th Cir. 2007). Section 1981 claims are analyzed under the same framework as Title VII claims. *Jenkins,* 478 F.3d at 260; *Roberson v. Alltel Info. Svcs.,* 373 F.3d 647, 651 (5th Cir. 2004).  Similar to the prohibitions of Title VII, the ADEA makes it illegal for an employer to fail or refuse to hire an individual or otherwise discriminate against an individual with respect to the terms and conditions of his employment due to his age.  29 U.S.C. § 623(a)(1).

Because Alexander's race and age discrimination claims rely on the same factual basis, they can be analyzed together. To prevail on a Title VII, section 1981 or ADEA claim, a plaintiff must demonstrate a *prima facie* case of discrimination, and the defendant must then articulate a legitimate, non-discriminatory reason for its decision. *Jenkins*, 478 F.3d at 260-61; *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005).

If the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either 1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or 2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). *Id.; Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).

Under the pretext alternative, the plaintiff bears the ultimate burden of proving discriminatory intent, and must do so to prevail on his claim. *Rios v. Rossotti*, 252 F.3d 375, 378 (5th Cir. 2001), *citing Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133 (2000). However, if the plaintiff demonstrates under the second alternative that race or age was a motivating factor in the decision, the defendant then must prove that the same adverse employment decision would have been made regardless of discriminatory animus. *Keelan*, 407 F.3d at 341; *Machinchick*, 398 F.3d at 352. If the employer fails to carry this burden, plaintiff will prevail under the mixed-motive alternative. *Id.*

15

## 2.    Analysis of Alexander's Discrimination Claims

GPF does not contest whether Alexander has established a *prima facie* case of discrimination with respect to each of his claims for failure to promote. Therefore, the burden shifts to GPF to articulate a legitimate, non-discriminatory reason for each of its decisions to promote other individuals to the position of GSM or New Vehicle Director. In its Brief in Support of its Motion for Summary Judgment, GPF has carried its burden of articulating legitimate, non-discriminatory reasons for its decisions to promote individuals other than Alexander to the positions of GSM and New Vehicle Director. Accordingly, Alexander is required on summary judgment to set forth evidence raising a genuine issue of material fact whether GPF's stated reasons for its decisions are either 1) a pretext for discrimination; or 2) that those reasons, while true, are only part of the reason for GPF's decisions not to promote Alexander, and that impermissible race and/or age discrimination also influenced GPF in its decision making.  *Id.*

The court finds that Alexander has not competently carried his summary judgment burden with regard to any of his failure to promote claims.  In his brief, he once again offers unsupported and conclusory statements that he was "eminently qualified" for the GSM position and that although he was Baker's "best manager," Baker chose someone else for that position instead.  As the court has previously stated herein, these assertions are not competent proof that would permit Alexander to survive summary judgment.  *See Turner*, 476 F.3d at 345-46; *Topalian*, 954 F.2d at 1131.

16

Further, GPF cites to Alexander's deposition testimony that as to each of the denied promotions, he has no proof that he was denied the position due to race or age, other than the fact that the person actually selected was either younger than he and/or of a different race. Thus, the court finds that Alexander has presented no evidence beyond his own subjective belief that he was the victim of illegal discrimination. An employee's subjective belief of discrimination, no matter how genuinely held, cannot be the basis for judicial relief. *Byers v. Dallas Morning News, Inc.,* 209 F.3d 419, 427 (5th Cir. 2000); *Lawrence v. University of Texas Medical Branch at Galveston,* 163 F.3d 309, 313 (5th Cir. 1999); *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1430 (5th Cir. 1996). GPF is entitled to summary judgment on all of Alexander's race and age discrimination claims.

### D.    Retaliation

Alexander claims that GPF retaliated against him by "blackballing" him when he attempted to gain and maintain employment at other auto dealerships. GPF moves for summary judgment on this claim, arguing that Alexander is unable to present facts to support it.

### 1.    Standards for Retaliation Claims

Title VII and the ADEA both prohibit discrimination against employees who have opposed an unlawful employment practice, made a charge of discrimination, or testified, assisted, or participated in any manner in an investigation or proceeding under the

relevant statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). The traditional burden-shifting framework articulated in *McDonnell Douglas* applies to Alexander's retaliation claim. *Evans v. City of Houston,* 246 F.3d 344, 351 (5th Cir. 2001), *citing McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

To establish a *prima facie* case of retaliation, Alexander must show that 1) he engaged in an activity protected by the applicable statutes; 2) he was subjected to an adverse employment action; and 3) that a causal link exists between the protected activity and the adverse employment action. *Davis v. Dallas Area Rapid Transit,* 383 F.3d 309, 319 (5th Cir. 2004); *Perez v. Region 20 Education Svc. Ctr.,* 307 F.3d 318, 325 (5th Cir. 2002).

If Alexander establishes a *prima facie* case of retaliation, the burden shifts to GPF to present proof of a legitimate, nonretaliatory purpose for its actions. *Davis,* 383 F.3d at 319. Then, if GPF carries its burden of production, Alexander must show that "but for" his engaging in protected activity, he would not have been subjected to an adverse employment action. *Strong v. University Healthcare Sys., L.L.C.,* 482 F.3d 802, 806 (5th Cir. 2007); *Medina v. Ramsey Steel Co.,* 238 F.3d 674, 685 (5th Cir. 2001); *Sherrod v. American Airlines, Inc.,* 132 F.3d 1112, 1122 (5th Cir. 1998). While this portion of the analysis may seem identical to the "causal link" step of the *prima facie* case, the burden here is more stringent. *Medina,* 238 F.3d at 685; *McMillan v. Rust College, Inc.,* 710 F.2d 1112, 1116-1117 (5th Cir. 1983). To withstand summary judgment, Alexander must

reveal "a conflict in the substantial evidence on the ultimate issue of retaliation." *Sherrod,* 132 F.3d at 1122.

### 2.    Analysis of Alexander's Retaliation Claim

It is undisputed that Alexander engaged in protected activity and was subjected to an adverse employment action.  After resigning his employment at GPF, Alexander was denied some of the jobs he applied for, and after working at a Cadillac dealership for a period of time, was fired from that position, a decision he alleges was influenced by GPF.  With regard to the third element of his *prima facie* case, a causal connection between his protected activity and the adverse employment action, Alexander admitted in his deposition testimony that he does not have any facts to support such an allegation, and that he relies only on his personal belief that he was "blackballed" by GPF in retaliation for filing a charge of discrimination.   Alexander's subjective belief that he suffered retaliation is not sufficient to sustain this claim.  *Byers,* 209 F.3d at 427; *Lawrence,* 163 F.3d at 313; *Douglass,* 79 F.3d at 1430.  Also, as with many of his other claims, Alexander relies upon vague and conclusory statements in his summary judgment briefing that do not equal competent summary judgment proof.   Accordingly, Alexander's retaliation claim fails because he has failed to set forth sufficient summary judgment proof in support of his claim that his charge of discrimination was causally linked to his difficulties in obtaining and maintaining employment following his resignation from GPF.

### E.   Constructive Discharge

GPF next asserts that Alexander's allegations of constructive discharge also fail. GPF argues that it is entitled to judgment as a matter of law on this claim, because the conduct alleged does not amount to severe and pervasive misconduct, and Alexander took no steps to complain about his working conditions to anyone at GPF before resigning.

### 1.   Standards for Constructive Discharge

Constructive discharge occurs when an employee quits under circumstances that are treated as an involuntary termination of employment. *Haley v. Alliance Compressor LLC,* 391 F.3d 644, 649 (5th Cir. 2004). Whether a constructive discharge has occurred is case and fact-specific. *Id.* The test for constructive discharge is whether the plaintiff's working conditions were so intolerable that a reasonable person in the plaintiff's shoes would have felt compelled to resign. *Id.* at 650; *Brown v. Kinney Shoe Corp.,* 237 F.3d 556, 566 (5th Cir.), *cert. denied,* 534 U.S. 817 (2001); *Webb v. Cardiothoracic Surgery Assocs. of North Texas, P.A.,* 139 F.3d 532, 539 (5th Cir. 1998). However, "part of an employee's obligation to be reasonable is an obligation not to assume the worst, and not to jump to conclusions too fast.'" *Webb,* 139 F.3d at 539, *quoting Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir. 1987); *see also Eugene v. Rumsfeld,* 168 F. Supp.2d 655, 678-79 (S.D. Tex. 2001); *Verhelst v. Michael D's Restaurant San Antonio, Inc.,* 154 F. Supp.2d 959, 965 (W.D. Tex. 2001).

The challenged working conditions must be viewed objectively by examining the specific conditions imposed by the employer, not by considering the employee's state of mind. *Boriski v. City of College Station,* 65 F. Supp.2d 493, 506-07 (S.D. Tex. 1999), *citing Epps v. NCNB Tex.,* 7 F.3d 44, 46 (5th Cir. 1993). However, the employee is not required to prove that the employer imposed the intolerable working conditions with the specific intent of forcing the employee to resign. *Haley,* 391 F.3d at 650; *Boriski,* 65 F. Supp.2d at 507. For purposes of evaluating a constructive discharge claim, the relevant working conditions are those the plaintiff was experiencing at the time of his resignation from employment. *Blanks v. Southwestern Bell Communications,* 2001 WL 1636359, *7 (N.D. Tex. 2001), *aff'd* 310 F.3d 398 (5th Cir. 2002), *citing Ugalde v. W.A. McKenzie Asphalt Co.,* 990 F.2d 239, 242 (5th Cir. 1993).

Constructive discharge requires a showing of a greater degree of harassment than that required by a hostile work environment claim. *Id.; Brown,* 237 F.3d at 566; *see also Boriski,* 65 F. Supp.2d at 507, *quoting Woodward v. City of Worland,* 977 F.2d 1392, 1402 (10th Cir. 1992), *cert. denied,* 509 U.S. 923 (1993) ("'[c]onstructive discharge requires considerably more proof than establishing unpleasant working conditions'"). Further, discrimination alone, without aggravating factors, is insufficient for a claim of constructive discharge, as is a discriminatory failure to promote. *Brown,* 237 F.3d at 566, *citing Boze v. Branstetter,* 912 F.2d 801, 805 (5th Cir. 1990), and *Landgraf v. USI Film Prods.,* 968 F.2d 427, 429-30 (5th Cir. 1992), *aff'd,* 511 U.S. 244 (1994).

## 2. Alexander's Evidence of Constructive Discharge

On summary judgment, Alexander states in a generalized and conclusory fashion that he "made every reasonable effort to make his career at Grand Prairie Ford work," but that Baker and Carr's conduct demonstrated he would not succeed at GPF and that his efforts to communicate his concerns to Baker were ignored. Alexander does not provide references to specific evidence that would raise a material fact issue whether he was facing a work situation that, viewed by a reasonable person, would be so intolerable he had to resign from his employment. As the court has stated above, it is not charged with the duty of combing the summary judgment record in search of evidence that will support Alexander's claims. *Adams*, 465 F.3d at 164; *Malacara*, 353 F.3d at 405. Rather, Alexander must, on summary judgment, direct the court to specific evidence showing that there is a material fact issue present. Thus, the court finds that Alexander has not carried his summary judgment burden with regard to this claim, and GPF is entitled to judgment as a matter of law.

## F. Intentional Infliction of Emotional Distress

GPF next moves for summary judgment on Alexander's state law claim for intentional infliction of emotional distress. Under Texas law, the elements of this claim are that 1) the defendant acted intentionally or recklessly; 2) the defendant's conduct was extreme and outrageous; 3) the defendant's actions caused the plaintiff emotional distress; and 4) the resulting emotional distress was severe. *Hoffmann-La Roche, Inc. v.*

*Zeltwanger,* 144 S.W.3d 438, 445 (Tex. 2004); *Bryant v. Lucent Technologies,* 175 S.W.3d

845, 849 n.1 (Tex. App. – Waco 2005, rev. denied).

To be liable for intentional infliction of emotional distress, a defendant's conduct

must be "'so outrageous in character, and so extreme in degree, as to go beyond all

possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

a civilized community.'" *Creditwatch, Inc. v. Jackson,* 157 S.W.3d 814, 817-18 (Tex.

2005), *quoting Hoffmann-LaRoche,* 144 S.W.3d at 445. Liability does not extend to mere

insults, indignities, threats, annoyances, petty oppressions or other trivialities. *Hoffmann-*

*LaRoche,* 144 S.W.3d at 445. It is for the court to determine, in the first instance,

whether a defendant's conduct was extreme and outrageous, and if reasonable minds

may differ, the issue shall be submitted to the jury. *Hoffmann-LaRoche,* 144 S.W.3d

at 445; *GTE Southwest, Inc. v. Bruce,* 998 S.W.2d 605, 612 (Tex. 1999).

Intentional infliction of emotional distress is a "gap-filler" tort, judicially created

for the limited purpose of allowing recovery in those rare instances in which a defendant

intentionally inflicts severe emotional distress in a manner so unusual that the victim has

no other recognized theory of redress. *Hoffmann-LaRoche,* 144 S.W.3d at 447, *citing*

*Standard Fruit and Vegetable Co. v. Johnson,* 985 S.W.2d 62, 68 (Tex. 1998). The tort is

not intended to supplant other available statutory or common law remedies, and does

not apply where the defendant intended to invade some other legally protected interest,

even if emotional distress results. *Id.*

23

GPF contends that its conduct was not extreme and outrageous, and the court agrees. Further, Alexander has brought numerous other statutory and common law claims to redress his alleged injuries. Because GPF's alleged illegal conduct, if proven, would not go unremedied, there is no "gap" to be filled with a claim for intentional infliction of emotional distress. *Id.* Alexander makes no argument and cites to no evidence in his summary judgment response that would raise a genuine issue of material fact regarding this claim. It is Alexander's burden to set forth this evidence, and the court is not obligated to search the record in support of such proof that would permit them to avoid summary judgment. *Adams,* 465 F.3d at 164; *Malacara,* 353 F.3d at 405. Also, by failing to brief this claim, Alexander has waived it. *Rodriguez v. ConAgra Grocery Prods. Co.,* 436 F.3d 468, 474 n.21 (5th Cir. 2006); *Communication Workers of Am. v. Ector County Hosp. Dist.,* 392 F.3d 733, 748 (5th Cir. 2004). For all of the above reasons, the court enters summary judgment for GPF on this claim.

### G.    Tortious Interference

Finally, GPF moves for summary judgment on Alexander's claim of tortious interference with his attempts to find employment in the automobile business subsequent to his resignation from GPF. Specifically, GPF asserts that this claim is preempted by Title VII and the TCHRA, and that Alexander is unable to present evidence on summary judgment that raises a material issue of fact regarding this claim. The necessary elements of Alexander's claim for tortious interference with prospective

business relationships are that 1)there was a reasonable probability that the parties would have entered into a business relationship; 2) the defendant committed an independently tortious or unlawful act that prevented the relationship from occurring; 3) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; and 4) the plaintiff suffered actual harm or damages as a result of the defendant's interference. *RAJ Partners, Ltd. v. Darco Const. Corp.,* 271 S.W.3d 638, 649 n.10 (Tex. App. – Amarillo 2006, no pet. h.); *Richardson-Eagle, Inc. v. Wm. M. Mercer, Inc.,* 213 S.W.3d 469, 475 (Tex. App. – Houston [1st Dist.] 2006, pet. filed).

The court agrees with both of GPF's arguments. First, it is clear that Alexander is basing this claim upon the same facts as his Title VII and ADEA retaliation claims, and therefore would be preempted. *See Martin,* 65 F. Supp.2d at 562 (plaintiff's claim of tortious interference with existing business relations was restatement of her employment discrimination claim, and thus was preempted by the TCHRA). Secondly, Alexander's undisputed testimony is that he has no facts to show that GPF tortiously interfered with any of his potential employment opportunities, other than that in some instances, he was not selected for employment. Finally, the court notes that Alexander has failed to respond to this claim on summary judgment, and therefore it has been waived. *Rodriguez,* 436 F.3d at 474 n.21; *Communication Workers of Am.,* 392 F.3d at 748. For all of these reasons, GPF is entitled to judgment as a matter of law on this claim.

25

IV.    **Defendant's Supplemental Motion for Summary Judgment**

In its Supplemental Motion for Summary Judgment, GPF argues that judicial estoppel should apply to foreclose Alexander's claims against it because Alexander failed to disclose those claims when he filed for bankruptcy protection in June 2003. Because the court has determined that Alexander's claims must be dismissed on their merits, the court does not reach the issues presented by GPF's supplemental summary judgment motion. Therefore, Defendant's Supplemental Motion for Summary Judgment is **denied as moot.**

V.    **Conclusion**

For the reasons stated herein, Defendant's Motion for Summary Judgment is **granted,** and Alexander's claims are hereby **dismissed with prejudice.** Defendant's Supplemental Motion for Summary Judgment is **denied as moot.** Any relief not expressly granted herein is also **denied.** Judgment will be entered by separate document.

**SO ORDERED.**

Signed May___31st___, 2007.

_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE